UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT SAMUELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-535 |
| | ) |
| SHANE B. WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

**Complaint for Declaratory and Injunctive Relief**

**Introduction**

1.      Shane Williams is a member of the Mooresville Town Council. Until early January of this year he maintained a Facebook page that he designated as his official page as a Town Council member. However, in January of this year he announced that he had deactivated his official Town Council page and would henceforth use his personal Facebook page for "Mooresville information," and he directed persons to follow his posts on that page. Since then, he has utilized what was formerly his personal page to communicate matters that he believes are of interest to the Mooresville community. Some persons are able to make some comments on Mr. Williams's posts. However, he has engaged in a course of conduct where he censors comments and those who make them based on their viewpoints, denying the ability of some persons to make comments. Therefore, in response to comments to which he objects, Mr. Williams has barred certain

[1]

individuals from being able to make comments as to the specific post, or has turned off commenting entirely as to that post. He sometimes, after a period of time, reopens the ability of some persons to make comments. Recently, he has begun to restrict the audience of many of his posts. Some posts are public, and thus visible to any Facebook user, while many others are limited to a restricted audience, and thus cannot be seen by anyone outside of that audience.

2.     Robert Samuels is a resident of Mooresville. Formerly, he followed Mr. Williams's posts on Mr. Williams's Town Council page, but Mr. Williams has now restricted who can follow him on his personal page that he is using for official matters. As a result, Mr. Samuels must go to the page proactively to check for content. Mr. Samuels has posted critical comments on Mr. Williams's posts in the past, although the comments have never been obscene, threatening, defamatory, or profane. Since January of this year, there have been times that Mr. Samuels has attempted to make comments on Mr. Williams's Facebook page, but has not been able to do so because Mr. Williams has changed the settings on the post, limiting the audience in such a way that some persons may post remarks but others may not. At other times Mr. Samuels has wanted to respond to Mr. Williams's posts and to view comments made by others, but Mr. Williams has seemingly withdrawn permission, either temporarily or permanently, for anyone to make comments. And recently Mr. Samuels has been denied the ability even to see certain

posts, because Mr. Williams has ceased making many of them public, although they are visible to those that Mr. Williams allows.

3. Mr. Williams has converted his former personal Facebook page to an official page, and his actions represent viewpoint discrimination in violation of the First Amendment. Appropriate injunctive and declaratory relief should issue.

**Jurisdiction, venue, and cause of action**

4. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6. Declaratory relief is authorized by Federal Rule of Civil Procedure 57 and by 28 U.S.C. §§ 2201, 2202.

7. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

8. Robert Samuels is a resident of Mooresville, Indiana.

9. Shane B. Williams is also a resident of Mooresville, Indiana, and is an elected member of the Mooresville Town Council.

**Facts**

10. Facebook is an online social media platform that allows individuals to interact and share information with other Facebook users.

11. Each user creates a personalized profile.

12. Once a user creates that profile, others may connect with that user by requesting to become a "friend." If the friend request is accepted, the two users will see each other's posts automatically in what Facebook terms the users' "feeds."

13. Other persons may also choose to "follow" that user and see that user's posts in their feeds, although the user can also control who is allowed to become a follower. In "Settings", under the heading "Who can follow me," the user can change the setting from public (any other Facebook user may follow the user) to friends (only a person whose "friend request" has been approved may follow the user).

14. Public figures may also create a Facebook page or pages where they can post information.

15. Posts made on such pages are generally "public," meaning that they can be viewed by any other Facebook user.

16. In Settings, however, a user may grant an audience the ability to view a post without also granting them the ability to comment on that post. A user may choose one of these three options for who may comment: public, friends, or friends of friends.

17. A "public" setting allows any other Facebook user to leave remarks below the post.

18. A "friends" setting restricts commenting ability to users whose friend requests have been accepted. The page's owner can "unfriend" someone at any time, however, thus denying persons the ability to comment.

19. A "friends of friends" setting allows both persons designated as "friends," as well as persons whom they have designated as their "friends" to make comments. Again, this can change if the user "unfriends" the person.

20. If a user designates something as public at the time of posting, Facebook will default to the broader settings chosen by the user for the handling of all public posts; however, the user can also override those settings and control comments on an individual post if she wishes.

21. Facebook also permits a user to totally block a person so that the blocked individual cannot see or comment on posts. If this occurs, not only is the person unable to make comments, but those who visit the page are unable to see any comment ever made by the person who is blocked.

22. Facebook allows government officials to create public-official pages in their roles as elected officials.

23. Facebook notes that a government-official page allows the official to "[c]onnect with your community" to "raise awareness around important issues, share your legislative goals and progress and highlight constituent services." https://www.facebook.com/gpa/best-practices/elected-official#recentupdates (last visited on March 19, 2023).

24. A government-official Facebook page not only allows the official to post information, opinions, or other materials, but also provides an opportunity for Facebook users to respond and comment on these posts.

25. A Facebook user may choose to "follow" an official's page, unless the official has changed their Settings to limit that ability. If a user is unable to follow the page, the user may seek the page out and attempt to make comments, although the official may also limit that ability to friends or friends of friends.

26. Shane B. Williams is a member of the Mooresville Town Council.

27. Until January of this year, Mr. Williams maintained both a personal Facebook page and an official Facebook page as a member of the Mooresville Town Council.

28. Mr. Williams utilized his official page to post information and comments of interest to residents of Mooresville.

29. On January 8, 2023, he announced that he was deactivating his official Town Council page, stating on his personal Facebook page that people should "[f]ollow my posts here for Mooresville information. I have deactivated my professional page but have not deleted it. It was getting redundant to share the same posts on Facebook twice."

30. Since this announcement Mr. Williams has used the page that was formerly his personal page to make posts in his capacity as a member of the Mooresville City Council and that he believes will be of interest to citizens of Mooresville.

31. Mr. Williams has converted his personal Facebook page to be his official page.

32. Mr. Williams reached out to Indiana's Public Access Counselor, Luke Britt, a public official who provides assistance and opinions concerning Indiana's public access laws, for advice concerning blocking persons from his Facebook page and received the following information from Mr. Britt.

> Thank you for reaching out. Your best bet is to disable comments and just post your content. That way you don't have to worry about blocking anyone. Alternatively, have separate accounts for official town business versus personal feeds. You can do whatever you want on your personal page.

33. On January 10, 2023, Mr. Williams made the following post on his Facebook page.

> Per the Public Access Counselor, I am lawfully allowed to suspend comments on my pages. It is widely accepted law that decorum can be expected at public meetings. Calling people liars and narcissists is unproductive and won't be tolerated here anymore. I am for free speech and open discussion but harassment and name calling has its limits. Therefore, no one will be blocked from information, but if conversations resort to unproductive name calling, I will be disabling comments. That goes for name calling me or each other. I get accused of drama so I am addressing it now. No more drama. Public policy is fair game. BE CIVIL! Fellow Mooresvillians deserve that much respect.

34. Following this announcement, Mr. Williams, while posting in his official capacity, has censored comments and/or those who can make them because he objects to the comments.

35. For example, at times Mr. Williams has created a public post that can—at first—be both viewed and commented upon by the public. After he has apparently become displeased with comments that have been made, he has changed the settings on the post from "public" to a more restricted setting such as "friends."

[7]

36. When Mr. Williams has done this, a person who is no longer allowed to make comments will see the following message below the post: "Shane Williams limited who can comment on this post."

37. Additionally, Mr. Williams has sometimes responded to negative comments by changing his broader settings regarding the handling of public posts. In those instances, no message has been displayed below the post, but there has no longer been the ability to comment.

38. However, after a period of time Mr. Williams has sometimes reopened the ability of persons to make comments and sometimes not.

39. At times Mr. Williams has responded to a critical comment by temporarily blocking the person from his Facebook account altogether. This has resulted in the person not being able to see Mr. Williams's Facebook page at all and has removed all comments that the person has ever made on past posts.

40. Mr. Samuels is a resident of Mooresville who followed Mr. Williams's now-inactive Town Council Facebook page.

41. Mr. Samuels is currently unable to follow Mr. Williams's Facebook page, evidently because Mr. Williams has changed the settings as to who may follow his page.

42. Mr. Samuels has frequently made critical comments on Mr. Williams's posts.

43. The comments, although critical, are not threatening, obscene, defamatory, or profane.

44. For example, in early February of 2023, Mr. Williams posted about the server room at Town Hall, describing the wiring as "very old" and resembling a "spaghetti bowl," adding, "Literally birds have gotten into our server room and defecated." Mr. Samuels commented, "Need a serious IT Company, not a good ole' boy network one that allows a network to be in that situation." Several days later, Mr. Williams posted that "500 of you have friended me since October" and expressed "[t]hanks to ALL of you." Mr. Samuels replied with a Someecards (a free online e-card service) image that reads, "I eagerly await the day you receive enough attention from your MANY attention seeking Facebook posts so the 'Look at Me' crap will stop! Grow up."

45. At times, Mr. Williams has restricted the audience on specific posts to prevent Mr. Samuels and others from making additional critical comments, while still allowing persons within the restricted audience to speak.

46. At other times, Mr. Samuels has not been able to make comments on a post because Mr. Williams has changed his broader settings to restrict comments on public posts.

47. On a number of occasions, Mr. Williams blocked Mr. Samuels from his Facebook page, although the block was removed eventually. The longest period of time that the block remained was three days.

48. Recently, Mr. Williams has changed his practice of making all or most of his posts public and has begun setting some posts to public and some to a restricted audience such as friends.

49. Mr. Samuels is not one of Mr. Williams's Facebook "friends" and therefore is not able to see any of Mr. Williams's posts or comments on these posts, even though the posts appear to be related to the Mooresville community and to Mr. Williams's role as an elected official.

50. The actions by Mr. Williams in blocking certain comments, including those by Mr. Samuels, and in blocking certain persons making the comments, including Mr. Samuels, represent discrimination on the basis of viewpoint and are not reasonable.

51. Mr. Samuels wishes to be able to see all of Mr. Williams's posts, to make comments in the future on Mr. Williams's Facebook page, and to be able to see all of the comments that are made by others, as opposed to those that are selectively curated by Mr. Williams.

52. At all times Mr. Williams has acted and has refused to act under color of state law.

53. Plaintiff is being caused irreparable harm for which there is no adequate remedy at law.

**Legal claim**

54. The viewpoint-based actions of Mr. Williams of denying persons, including Mr. Samuels, the ability to view certain posts on Mr. Williams's Facebook page and Mr. Williams's viewpoint-based actions of selectively blocking the ability of Mr. Samuels and others to comment on specific posts violates the First Amendment.

**Request for relief**

      WHEREFORE, plaintiff requests that this Court:

1. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2. Declare that the actions of Mooresville City Council member Shane Williams violate the First Amendment for the reasons noted above.

3. Enter a preliminary injunction, later to be made permanent, enjoining Shane Williams from prohibiting comments on his Facebook page because of their viewpoints and from selectively limiting the audience for posts on his Facebook page.

4. Award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

5. Award all other proper relief.

        Kenneth J. Falk
        Stevie J. Pactor
        ACLU of Indiana
        1031 E. Washington St.
        Indianapolis, IN 46202
        317/635-4059
        fax: 317/635-4105
        kfalk@aclu-in.org
        spactor@aclu-in.org

        Attorneys for Plaintiff